May it please the Court, Jaspreet Kholra Singh on behalf of Petitioners Gurjeet Singh and Praminder Kaur Nijar. At issue in this case is whether a non-citizen's asylum status can be terminated without a determination by the Attorney General. That termination is warranted. There are a few things I would like to discuss that the parties agree on. First, there is no dispute that under Section 1158 C.2 of Title VIII of the United States Code that the Attorney General has the authority to make determinations as to whether or not an asylee's status may be terminated. The second is that the parties also agree that although there is no specific statutory provision for termination of the asylum status based on the fact that it has been fraudulently obtained, Section 1158 D.5b allows the Attorney General, by regulation, to establish additional grounds for termination not inconsistent with the Act. And indeed, the Attorney General has established those regulations at Section 1208.2.4 of the Code of Federal Regulations. The Department of Homeland Security Counsel, help me with a problem I have. Yes. It looks as though this Third Circuit decision in Bargava says that the Department of Homeland Security can terminate asylum without the Attorney General doing anything. Why isn't that a problem for you? Or are you asking us to disagree with the Third Circuit because you think it's mistaken? We do think that the Third Circuit is mistaken, and it's mistaken based on the plain language of the statute. The Third Circuit in Bargava held that the statute is silent with respect to whether asylum status can be terminated absent a determination by the Attorney General, something that Petitioners submit is patently inopposite to the plain language of the statute. Furthermore, the regulations are silent on the issue, which we believe is defensible in light of the fact that the regulations – I think what they – where they got the silence from is the language of the statute is, may be terminated if the Attorney General determines that. And they said, well, Congress didn't say one way or another. What happens if the Department of Homeland Security Department determines that? Well, Your Honor, Congress, when it amended Section 1158, was very clear when it was giving authority to the Secretary of the Department of Homeland Security and the Attorney General. It wasn't ambiguous. In the beginning of the statute, that Congress specifically grants the Secretary the power to grant asylum. In the rest of the statute, every time it talks about determinations of accepting a noncitizen from applying for asylum, barring an alien from asylum, having an alien's application declared frivolous, and termination, the determination always rests with the Attorney General. Now, the statutes also provide – I remember when we used to handle these things before 9-11 had – everything was in Maine Justice. The whole immigration business was in the Justice Department. And then that – the post-9-11 statute created this new Cabinet Department. Is that right? That – that is correct, but – And what you're saying is there's a leftover reg from before they were split up? No, no, Your Honor. Excuse me. But it's not a leftover reg. They – when they amended the statute, they made it very clear where the Executive Office of Immigration Review, representing the Attorney General, would be a neutral decision-maker in this situation. The Department of Homeland Security has the authority to grant asylum. The Asylum Office is representing the Department in this situation. You can't grant someone asylum, which has many rights afforded underneath it, and then just take it away without any kind of due process before a neutral decision-maker. Here, the prosecuting agency is the Department of Homeland Security. Now, let's – let's say that – We had a – we had an en banc, Gorbach v. Reno, I think it was, where at some level of immigration officials, where they can grant citizenship, they said, if we can grant it, we can take it away. And we said, no, granting and taking away are two different powers. I don't remember any discussion of that case in the briefs in this one. Does it bear on this one? It does bear. And Casas Castrillion is another case that this Court – where this Court actually held that a decision by a neutral adjudicator is necessary in taking these rights away. And it's clear in the language of the statute. It's very clear in the language of these statutes where power is granted to the Secretary of the Department of Homeland Security and where the Attorney General has to make those determinations. And there's a reason for that. If I'm having these rights taken away, then I actually – or if Mr. Kennedy afforded the opportunity to confront the evidence before a neutral decision-maker. Well, his problem is he had the opportunity many times. He just didn't show up at any of his hearings. And, of course, the boogeyman that your adversary raises is, can a guy just get asylum based on fraud, and then whenever they ask him to come in and talk about it, just blow them off and stay here on fraudulently obtained asylum forever? I don't think that that's actually the case. That is what the Board of Immigration Appeals says in its decision. So as far as we know, it's the case. It is the case. He got a bunch of notices and he didn't appear. Maybe I can help a little bit. It seems to me that the most sensible way of reading both the statute and the regulation with respect to what the asylum officer is supposed to do is that if – first off, we have these provisions for coming in for an interview. So it says, termination – asylum officer may terminate a grant of asylum if following interview he determines da-da-da-da-da. It doesn't say what happens if there's no interview. But as I read the regs and as I read the manual, the most sensible thing is if your client or some other client doesn't show up for the interview, that – showing up for the interview is not the end of the story. It'll be like a prove-up and a default judgment. That is to say, there has to be enough evidence in the record to support termination. But if there was enough evidence to bring the proceeding in the first place and your client never shows up to contest it, I think that's child's play. But at least it would protect against a sort of frivolous petition brought by the government to cancel asylum. It would require the asylum officer to make a finding on the record. Here's the evidence supporting it. So, I don't have any trouble saying that the asylum officer has the authority to terminate asylum when somebody doesn't show up, so long as the asylum officer makes the finding that there's enough evidence in front of me right now to say that this has been, in this case, procured by fraud. Once the asylum officer does that – I mean, the regulation says asylum officer may terminate a grant of asylum. We do not disagree with that, Your Honor. And once the – what happens once the asylum officer has terminated asylum – let's assume for the moment he's done it properly. Sure. Then we get a removal proceeding, right? Yes. And so the guy isn't tossed out of the country until the removal proceeding is finished. And as I would read – I wish the statute were clearer. I wish the regulations were clearer. But as I read this and infer and as I understand from the practice, I have no – it seems to me just silly that if the asylum officer has terminated asylum based upon a finding of fraud, and now we're in a removal proceeding, that your client can't contest the termination by the asylum officer and contest the evidence. Absolutely, Your Honor. And as I understand the government's position, well, your client can do it if he was granted asylum by the IJ, but he can't do it if he was granted by an asylum officer. That's just nuts. It doesn't provide for any process. That's absolutely correct. It provides for process in a certain category of cases where the asylum officer originally denied the application for asylum. Correct. It's appealed. It goes to the IJ. The IJ grants asylum. Well, if the IJ has granted asylum, at least the government can contradict, but as I understand the government's position, it says, well, in that instance, the IJ in the removal proceeding gets to test the evidence as to whether or not there's been fraud. On the other hand, if the asylum officer granted asylum, the government makes no appeal, asylum simply granted, then there's no opportunity at all to contest in the removal proceeding whether asylum is properly terminated. I have to read the statute that way in the race. It's just crazy to me. Your Honor, that is our argument. There really is no other way of reading the statute and where the regulations won't contradict the plain language of the attorney general making that determination. Are you conceding that the regulation is, and within the authority of the Department of Homeland Security, it's a valid regulation? Yes. The interview is, we are not conceding that the Department of Homeland Security The reg says an asylum officer may terminate a grant of asylum. The statute says asylum may be terminated by the attorney general. As I understand, I had thought you were arguing that Department of Homeland Security has no authority to issue this regulation because only the attorney general can terminate asylum. But now I understand you to be saying, no, they do have authority. An asylum officer may terminate asylum. It's just that there was no due process here. Which is it? Did you understand my question? Yes. Yes, I did, Your Honor. The attorney general actually makes the regulations. And the attorney general can't make anything that's inconsistent with the statute. I thought Department of Homeland Security made this reg. No. The attorney general does. And in 1158D5B, that's where the attorney general has granted that authority. Now, in the regulation, the asylum office can grant and then terminate, but what's at issue here is whether or not the immigration judge, whether or not the Executive Office of Immigration Review has the authority and the jurisdiction to review that termination. Now, your problem there is due process. Yes. It seems to me that once you concede that this is a valid regulation, there's no due process problem. Here's why. Yes. You have a right to due process before your property is taken in a civil proceeding. That means you get notice and an opportunity to be heard. If there's a summons and complaint and the defendant fails to answer, then judgment can be rendered against him by default. That's perfectly okay. It's consistent with due process. Here, what you've got is an analogy. The person gets notice. He gets an opportunity to be heard. He chooses not to appear in order to be heard. At that point, I can't see any denial of due process in entering judgment against him. Your Honor, the key point there is that the asylum office is not a neutral adjudicator, and the statute is very clear that the attorney general – But he could appeal if he lost before the asylum office. He can appeal. He can appeal that termination. That's the problem in this case. He can or cannot? He cannot appeal the termination of his asylum. The immigration judge and the board both ruled that the immigration judge has no authority to review that termination, and it's absurd.  Let's hear from the government, and then we'll give you a chance to respond. Thank you. Can he appeal? Our position is that he can appeal before – Where does he go, and how does that work? How do we find it in the breaks? I'm sorry. Again, I missed this consonant. You say he can or cannot? He can appeal. He can appeal before the court. It's okay to appeal? Yes. And where does it say that, and where does he go? Well, our position is that under 1282A2B, he can appeal, as it is a question of law. Can appeal to whom? To the court of appeals. Can appeal what? Can appeal – I'm lost. The termination of his asylum status. So he appealed – in your view, the asylum officer terminates asylum status, and then what, there's a direct appeal to us? The asylum officer, yes. No, he would have to go through the immigration judge. His case would be – he would be placed into removal proceedings. However, he would not be able to have the immigration judge review that termination, and it would go through the removal proceedings, and he would – and as he is issued a final order of removal, he would then be able to appeal the termination of asylum status. Josh? I'm lost. I'm lost. Suppose the person gets a notice to appear for an interview before the asylum officer, and unlike this fellow, he actually does appear. And he says, I'm still entitled to asylum. These charges of fraud are false. I need the asylum for the true reasons I stated before and on which I got it. The asylum officer says, I just don't believe you. I'm terminating your asylum. There is a showing of fraud as far as I'm concerned. Now, rather than wait for a removal proceeding, is there any way for him to go to an IJ or the BIA or anybody and say the asylum officer is wrong? No, he would automatically be placed into removal proceedings. And in the removal proceeding, what would be – I suppose it would be based on a final determination having been made that you obtained your asylum by fraud, right? Well, if he – no, that decision wouldn't be reviewed. The termination wouldn't be reviewed. But he has the opportunity, as this petitioner had, to renew his asylum application or file a new asylum application. And therefore, once that application was reviewed, if he was denied again, he could appeal to the board. And then if that was – his appeal was dismissed, he could appeal to the board. Is there any way that he can establish in some proceeding that he did not obtain his previous asylum grant by fraud? Before the asylum officer. He could provide evidence that he did not. Asylum officer thinks the guy's a liar. And he says, as far as I'm concerned, it's fraud. Is there anywhere else he can go to say it's not fraud? Before the court of appeals is the government's position. And before the court of – We don't make findings of that. Before the court of appeals, how? How does he get from there, from the asylum officer, to us? Well, it would be a question of our position, a question of law. No, no, no. I'm not asking that. Just tell me, okay, he's in front of the asylum officer. He's had a hearing. The asylum officer, after the hearing, says, your asylum was obtained by fraud. I don't believe you. He thinks the asylum officer's wrong. And you say he can appeal that to us. Does he come directly to us? I don't think so. What happens? No, he doesn't come directly to the court of appeals. He would be placed in removal proceedings. Right. And he'd have the opportunity to review his asylum application, the same application, or file a new asylum application. But he can't do it by challenging the removal, by saying the asylum officer got it wrong? No, Your Honor. Now, why can someone in a removal proceeding, why are you saying he's got to file a new asylum application and have that be the mechanism for testing whether or not he did fraud? Because in the new asylum proceeding, obviously, whether he's committed fraud in the past is going to become relevant. Why does he have to do it with a new asylum application instead of simply resisting removal on the ground that the asylum officer made a mistake? Well, he's not contesting the fraud with the new asylum application. Well, of course he is indirectly. He's saying I'm entitled to asylum, and the government's going to say, yeah, but all the stuff you've ever said is fraudulent. He's going to get an adverse credibility determination supported by substantial evidence on the record as a whole. He's a liar. And it's finally determined that he got asylum by fraud. I mean, it seems like all we're talking about here is delay. Well, I mean, the regulations don't provide for the determination. Let me ask you this. I may be misunderstanding the government's position, but I think the government's position is that you've got this rather awkward proceeding that you've just described when the asylum officer is the entity who's granted him asylum, but that he can resist and test the question of his fraud and the AO's determination in front of the IJ, and the IJ has a chance to reveal what the AO did if it was the IJ who granted him asylum. Is that what your position is? Our position, if the immigration judge had granted him asylum, the immigration judge could terminate his asylum status, yes. No, I'm different. Maybe you're answering the question. I want to make sure we're both very clear on this. I've got two different people side by side. One of them comes and the asylum officer grants him asylum. Government doesn't appeal. He gets asylum. Boom. The other one, he comes in front of the asylum officer. Asylum officer denies him asylum. That's appealed, comes to the IJ. The IJ overturns the decision of the asylum officer and grants him asylum. So we now have two people, both of them asylum. One of them got it straight from the AO, and the other one got it from the IJ. Now, both of them, turns out, might have committed fraud. And both of them are taken back in front of an AO to determine whether or not they committed fraud. And in both instances, the AO, after hearing, says, you committed fraud and I terminate asylum. What happens to those two people? Well, it's two different situations. I understand. So what happens to them? Well, the process, I believe, is different, though. The asylum officer would have denied the asylum. The petitioner would have been referred to an immigration judge. The immigration judge grants the asylum. You're just repeating my hypothetical. What I want to know is what happens for both of them once the asylum officer determines, after hearing, that they committed fraud. Now, I think what you're going to tell me is this. Maybe the cleanest way to do it is I'll just tell you what I think you're going to tell me, and you can say yes or no. I think what you're going to tell me is, if it was the AO who granted asylum in the first instance and the IJ had nothing to do with it, the AO gets to terminate asylum and the IJ never gets to review that determination, and his only hope is to file a new asylum application. Right. Okay. And the second case where the IJ granted asylum after initial denial by the AO, when the AO comes in now and says, I find that there's been fraud and I terminate that, that the IJ can review that determination directly by the AO that there's been fraud. Is that right? No, the asylum officer wouldn't be involved in the second scenario. The service, the DHS would have been the one to institute the proceedings so that the immigration judge, the DHS can bring it before an immigration judge or they can terminate proceedings on their own. Counsel, I don't understand where there's any statutory authority for a regulation giving the asylum officer the power to terminate asylum. The reason I can't understand it is this. I read the reg, and there's no question the reg does, but a reg can only operate if there's statutory authority for the reg. I read the statute and it says at 1158B, the Secretary of Homeland Security or the Attorney General may grant asylum. And then it says at subsection C, asylum granted under subsection B may be terminated if the Attorney General makes the requisite determinations. So the way I read it is either one of them can grant it, but only the Attorney General can terminate it. Now, there's no question that the reg says that the Department of Homeland Security can terminate it, but I don't see it in the statute, and all I'm getting is a kind of notion that if an asylum officer can grant asylum, he can take it away. But we rejected that inference in the context of naturalization. In Goreback v. Reno, we said it sounds good, but it makes no sense, and I don't see why that isn't analogous. Well, Your Honor, I first, the government would contend that it's an oversight by Congress that the Secretary of Homeland Security is not included under 1158C2. And also, this Court has recognized that the Attorney General also It may be Scribner's error by Congress, but that's not an easy inference to draw if we can make some sense of why Congress may have done that. What's your... Well... But that's what you're saying, right? Yes, I think that the regs would be able to verify us if we did not. Okay, now, what is the next reason why the statute shouldn't be read to mean that either cabinet department can grant asylum, but only one of them can terminate it? Oh, because in other... In this Court, I mean, it has recognized that Attorney General also means Secretary of Homeland Security. That... I don't get that. I thought they're the heads of different cabinet departments. What did we say? They are. Say that. In Aguilera-Ruiz v. Ashcroft, the Court held that the Attorney General, now the Secretary of Homeland Security, has broad authority to administer and enforce immigration laws. Well, in a lot of contexts, what used to be within the Department of Justice is now within the Department of Homeland Security, and I think that's what we were talking about in that phrase. Did we hold in a context like this that you read Attorney General to mean Secretary of Homeland Security? I can't recall, actually, the case itself. But the Attorney General has authority to extend, to establish regulations necessary for administering and enforcing those laws, so... But only for administering and enforcing those laws, and the law seems to give the power to grant asylum to two people... Well, they're giving the power to DHS to terminate asylum. Where does it say... It doesn't say that. It says that the power to terminate asylum is in the AG in 1158C2. Where does it say DHS can terminate asylum? It doesn't say, but our position is that it was just an oversight by Congress that Secretary of Homeland Security is not included. But I can think of a reason that it might not be an oversight, and if I can think of some sensible reason that it's not an oversight, then I don't think I'm allowed to say it's Scribner's error. And the reason would be that the Attorney General has an established procedure before neutral arbiters to make determinations that the Department of Homeland Security doesn't. Our other position is just that it would make the regulations ultra-virus. It would make the regulation what? Ultra-virus. That it would be beyond the scope if we allowed... Yes, that's essentially what I'm asking. Why isn't it ultra-virus? Well, because the Asylum Office can also grant the asylum. Yeah, but the statute says the Asylum Office can grant. Granting and taking away are two different things. I see, Your Honor. Yes, but... Now, I think you're going to resist this, but it's possible to read the regulation as not ultra-virus if we read the regulation as allowing review by the I.I.J. in a removal proceeding of the termination by the Asylum Officer to see if it's supported by evidence. As to say termination doesn't mean that it's done. It means I've made a decision that it should be terminated, and now in the removal proceeding, where you're in front of the I.I.J., because that is the next step after the Asylum Officer is terminated, the Asylum Officer's factual conclusion can be contested. I don't know why we want to protect the Asylum Officer's decision from ordinary review. I mean, there are very few decisions by an Asylum Officer that are insulated from review. There are a fair number of decisions by the I.I.J. and the B.I.A. that are insulated from review by us, but to allow the decision of the lowest-level administrative official from any review within the administrative agency, that's quite extraordinary. Well, that's not in our position. Our position is that... No, that is your position. It is your position. Well, that the termination of the asylum status can be reviewed, but cannot by the I.I.J. or the B.I.A., but by a court. But we can't review. We're specifically not permitted to review factual determinations to see if we agree with them. All we can do is determine whether there's substantial evidence on the record taken as a whole, the universal camera administrative law decision under Elias Zacharias for the decision. That means all three of us can read it and say, this is just flat wrong, but there is substantial evidence in the whole record that gives support to it, so it stands. We do that all the time. Well, our position is that under 1252A2D that you can review it. But your position that we can review it only in the context of a brand-new asylum application, not in the context of a removal proceeding? No, in the context of the removal proceedings. That's our position that you can review it. Isn't it established with finality  that the asylum was obtained by fraud? No, it wasn't established during the removal proceedings that the asylum was obtained by fraud. Once the asylum officer has made the determination under this reg, once the asylum officer has terminated the asylum, then doesn't the what would be an IJ in the removal proceeding say, well, it's established that the asylum was obtained by fraud? No. The asylum or the immigration judge can't review that determination. It is cannot review it? The he cannot review the asylum officer's determination. You said you said no, the asylum the IJ cannot review the asylum officer's determination that the asylum was obtained by fraud. And it sounds like your answer should be yes, the IJ cannot review the asylum officer's determination. Because that's what I asked you. Maybe maybe I misspoke. Maybe I didn't hear it correctly. The IJ cannot review the determination of asylum status by the asylum officer. So when he does get into removal proceedings he's stuck with a final unreviewable determination that he obtained this asylum by fraud? By the immigration judge, yes. The immigration judge can't review that. I got it. And then but we can review it and you're saying we can review it if the asylum seeker who's now had his asylum terminated applies newly for asylum. Yes, if that is denied. His new application But that's just nuts because I'm assuming he's now outside the one-year bar because it's going to be a long time since he was granted asylum and he's statutorily barred from having asylum because he's been in the country for more than a year without applying for asylum. I don't I see nothing in the statute of the rights that allow him to do a new asylum application after a year. Well, the immigration judge has jurisdiction. He can decide whether or not there are extraordinary or changed circumstances that are allowed. But that's craziness. What do you mean extraordinary circumstances? The ordinary rules for extraordinary circumstances would be ineffective assistance of counsel. All kinds of crazy circumstances. But the only changed circumstances is that the AO just said that he's committed fraud. That's a crazy ground that will allow him then to get  prison. I mean, I'd like the statute to make sense. I realize in certain circumstances it doesn't. But I don't see any strong statutory ground why it has to have this reading and it seems to me there are other ways we can get at it. Okay. Thank you. I think you said it best that there is a way of interpreting the regulation in conjunction with the statute where it's     instead of just saying the drug is all for virus? Because the drug is all for virus. The drug is all for virus. The drug is all for virus. Because we don't think that there's a problem with the asylum office looking at these interviews. And the reason for that is they may determine at that there's a good reason for a person to attend this interview. And that is they get a chance to contest before DHS that my fraud isn't there. So if Why wouldn't it be just like getting asylum? Yeah, a person goes to an asylum officer first then he goes to an IJ then maybe the BIA. Well, that's provided for in the regulations as well. DHS is able    before the asylum officer. The other thing is it seems to me that you would be delighted with a decision that said that the reg is ultra-virus so only the attorney general can terminate asylum. But what about that reg that starts with the asylum officer but goes on to the IJ? Well, our position is that you have to interpret the regulation that that is the way this has to act. It doesn't say so. Well, the statute is very hard to get around because it says without qualification the AO may terminate. And it doesn't say may recommend termination, may make a finding of fact, da-da-da-da. To address a couple of points that I think will help in that, one, the duties of the Secretary of Homeland Security are very clearly outlined in the statute at 1103. Two, the duties of the Attorney General are also clearly outlined in  The other thing is that I think it would help if we look at Bhargava. In that decision the court, the Third Circuit actually relies on the example of another statute to find that silence. They say in 1186 that it that 1186 specifically provides for review by the immigration judge of an adverse decision made by DHS at an interview. However, 1186 mandates an appropriate review of that interview is necessary in statute. I think what you're telling us now is you want to keep the reg because it gives you an extra layer to go through before they can deport anyone. But you want to add the other layers that the reg says or clearly implies don't exist, like the IJ, the BIA, and the Court of Appeals. And what you want to do is stall the thing at the first layer by saying if a guy doesn't show up, there hasn't been an interview, they can't go on. No, Your Honor, that is not what we're saying. Because let's take the example. So what can the asylum officer do if he's sent out proper notice and the person with asylum does not show up for the interview? He can make the same option he has in the beginning. He can make the referral to the Executive Office of Immigration Review, place the person in termination, in removal proceedings. It doesn't say that. Well, the statute provides for that. And it does say that. It does provide for that's the two tracks, that's the system that's in place. The asylum officer has the option of referring. Suppose Mr. Nigger showed up for an interview. What it gets to at the removal proceeding, what they're going to say is, well, we don't have a determination from the asylum officer that he procured his asylum by fraud, nothing we can do to remove him. That's the DHS is the prosecuting agency in that situation and they can present that fraud to the immigration judge. Or they can present their finding. Where does it say that? All I see in the reg is that the asylum officer can determine that there was fraud. Well, where, in the regulation itself it says that, but in I actually I can submit that authority. I don't have it directly in front of me, but it's there. If we want more, we'll ask for it. Okay. Thank you both for your arguments. Thank you. The case of Mejar v. Holder now submitted for decision.
judges: Hug, Kleinfeld, Fletcher